IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| WILLIAM GEOFFERY DOBBINS, | ) |
| AIS #167085, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | )   CIVIL ACTION NO. 2:08-CV-997-MEF |
| | ) |
| WARDEN JOHN CUMMINS, | ) |
| | ) |
|     Defendant. | ) |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

### I. INTRODUCTION

In this 42 U.S.C. § 1983 complaint, William Geoffery Dobbins ["Dobbins"], a former state inmate and frequent litigant in this court, challenges actions taken against him during his confinement in the medical unit at the Kilby Correctional Facility ["Kilby"] in December of 2008. Specifically, Dobbins complains that defendant Cummins violated his First Amendment right to the free exercise of his religion by not allowing him to attend church services held in the prison. *Plaintiff's Complaint - Court Doc. No. 1* at 2-3. Dobbins further complains that Cummins denied him access to the court by refusing him physical access to the law library. *Id*. at 3. Dobbins seeks monetary damages for the alleged violations of his constitutional rights.[1]

---

[1] Although Dobbins also requests his transfer to Ventress Correctional Facility, it is clear that this request for relief is now moot as Dobbins is no longer incarcerated in the state prison system. *McKinnon v. Talladega County, Ala.*, 745 F.2d 1360, 1363 (11th Cir. 1984); *Zatler v. Wainwright*, 802 F.2d 397, 399 (11th Cir. 1986) (*per curiam*).

The defendant filed a special report and relevant supporting evidentiary materials addressing Dobbins' claims for relief. Pursuant to the orders entered in this case, the court deems it appropriate to construe this report as a motion for summary judgment. *Order of February 17, 2009 - Court Doc. No. 10*. Thus, this case is now pending on the defendant's motion for summary judgment. Upon consideration of this motion and the evidentiary materials filed in support thereof, the court concludes that the defendant's motion for summary judgment is due to be granted.

## II. STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[2] The party moving for summary judgment "always bears the initial responsibility

---

[2] Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed.R.Civ.P. 56 Advisory Committee Notes. Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id*. "'Shall' is also restored to express the direction to grant summary judgment." *Id*. Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [– now dispute –] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

The defendant has met his evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it.")  A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
> must distinguish between evidence of disputed facts and disputed matters of

3

>professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted). Consequently, to survive the defendant's properly supported motion for summary judgment, Dobbins is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claim(s) for relief. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*. "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Id*. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment

appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting

5

the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine dispute of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (Summary judgment is appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil

case. In this case, Dobbins fails to demonstrate a requisite genuine dispute of material fact in order to preclude summary judgment. *Matsushita*, *supra*.

### III. DISCUSSION

#### A. Absolute Immunity

With respect to claims lodged against defendant Cummins in his official capacity, he is immune from monetary damages. Official capacity lawsuits are "in all respects other than name, ... treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear to the court that the defendant is a state official entitled to sovereign immunity under the Eleventh Amendment for all claims seeking monetary damages from him in his official capacity. *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994). Thus,

defendant Cummins is entitled to absolute immunity from any claims for monetary relief presented against him in his official capacity. *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

### B.  Uncontested Material Facts

Upon his release from a free-world hospital on December 4, 2008, Dobbins was placed in the hospital ward at the Kilby Correctional Facility until his transfer to the Ventress Correctional Facility on December 16, 2008.  While confined in the medical unit at Kilby, Dobbins could not "go to church .... or the law library." *Plaintiff's Complaint - Court Doc. No. 1* at 3.  Defendant Cummins does not dispute these assertions and advises that inmates confined in the hospital unit "are prohibited from leaving this area to go to the law library and to church services for their own medical safety.  This process prevents the spreading of germs, diseases, etc. from population inmates back to the hospital ward and vice-versa." *Defendant's Exhibit A (Affidavit of John Cummins) - Court Doc. No. 9-1* at 1.  Inmates housed in the medical unit are, however, provided the opportunity to practice their respective religions freely and are also allowed access to legal materials.  *Id*. at 1-2.

> Kilby's Law Library Law Clerks service the hospital unit ... five days a week.  A law clerk goes to the hospital ward at [a regularly scheduled time] Monday-Friday and announces to all inmates housed in that [unit] that if anyone needs any law library services to include requests for cases or books to fill out an Inmate Daily Service Request Form.  The forms are passed out to inmates requesting service.  If assistance is needed, the law clerk aids the inmate in completing the form and answers any questions....  The requests [for materials received from inmates in the hospital unit] are taken back to the Inmate Law Library and filled.  Each morning Monday through Friday ...

>  the inmate law clerk makes rounds to ... restricted areas [such as the hospital ward] to pick up books distributed the prior day and pass out materials requested [by inmates] the prior day from the requests submitted. [Dobbins made requests to the law clerks and received both assistance from the clerks and legal materials during his confinement in the hospital ward.]
>
>  The law library records indicate that Inmate Dobbins received service on 12-12-2008, and was given a 42 U.S.C. 1983 form (Civil Rights complaint) for the Middle District of Alabama. On that same day [Dobbins also] received a copy of Alabama Department of Corrections Administrative Regulation 403, and a copy of the Self Help Litigation Manual.
>
>  Kilby Correctional Facility's Chaplain visits the hospital ward ... once or twice weekly to talk with the inmates regarding religious matters. He visits every bed and talks with the inmates regarding any religious or family issues [the inmates may] have. [Kilby's] Chaplain ... passes out materials and offers spiritual guidance to any inmate requesting such. If an inmate[] requests to see the Chaplain at anytime through a request slip, the Chaplain will visit and counsel with that inmate.

*Defendant's Exhibit A (Affidavit of John Cummins) - Court Doc. No. 9-1* at 1-2.

### C.  Free Exercise of Religion

Dobbins does not identify his religious affiliation, but he asserts the failure to allow him to attend church services while confined in the medical unit violated his right to the free exercise of his religion as protected by the First Amendment. Defendant Cummins argues that adherence to the policy prohibiting inmates with medical issues, the severity of which requires their confinement in the health care unit, from attending church services does not result in a violation of an inmate's constitutional rights as the challenged policy advances the legitimate penological interests of promoting and maintaining the health of inmates within the facility. In addition, the defendant asserts that the limitation on attendance at church services did not improperly burden the exercise of Dobbins' religion

9

because Dobbins received unlimited access to the chaplain and could practice his religion while confined in the medical unit.

Federal law recognizes "that 'courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform.' [*Procunier v. Martinez*, 416 U.S. 396, 405, 94 S.Ct. 1800, 1807 (1974)]. As the *Martinez* Court acknowledged, 'the problems of prisons in America are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree.' *Id.*, at 404-405, 94 S.Ct., at 1807. Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources...." *Turner v. Safley*, 482 U.S. 78, 84-85, 107 S.Ct. 2254, 2259 (1987). Correctional officials are therefore "accorded latitude in the administration of prison affairs[,]" *Cruz v. Beto*, 405 U.S. 319, 321, 92 S.Ct. 1079, 1081 (1972), which necessarily includes "the [inescapable] withdrawal or limitation of many [inmate] privileges and rights." *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804 (1974) (quotation marks and citation omitted); *Bell v. Wolfish,* 441 U.S. 520, 546, 99 S.Ct. 1861, 1877 (1979).

"In the First Amendment context, ... some rights are simply inconsistent with the status of a prisoner or 'with the legitimate penological objectives of the corrections system.'" *Shaw v. Murphy*, 532 U.S. 223, 229, 121 S.Ct. 1475, 1479 (2001), quoting *Pell*, 417 U.S. at 822, 94 S.Ct. at 2804. In accordance with this principle, an inmate's rights established under the First Amendment are not protected if allowing such protection is

"inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell*, 417 U.S. at 822, 924 S.Ct. at 2804. Thus, while inmates retain a constitutional right protected by the First Amendment to exercise their sincerely held religious beliefs freely, this right is limited by the fact of incarceration and valid penological objectives such as maintaining the health and safety of inmates. *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 345 (1987); *Turner v. Safley,* 482 U.S. 78 (1987); *Lawson v. Singletary*, 85 F.3d 502, 521 (11th Cir. 1996). The law is well settled that "central to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves [which entails the preservation of inmate health and safety]." *Pell*, 417 U.S. at 823, 94 S.Ct. at 2804; *cf. Bell v. Wolfish,* 441 U.S. at 546, 99 S.Ct. at 1878 (maintaining safety and security of inmates is "essential goal[] that may require limitation or retraction of the retained constitutional rights of ... convicted prisoners...."). It is therefore clear that preservation and protection of inmate health within a correctional facility is essential to the facility's effective administration and constitutes both a compelling and substantial governmental interest. *Pell*, 417 U.S. at 823, 94 S.Ct. at 2804; *Lawson*, 85 F.3d at 512; *Harris v. Chapman*, 97 F.3d 499, 504 (11th Cir. 1996).

In a prison setting, to demonstrate a free exercise violation, a plaintiff must show that prison officials administered or implemented a policy or regulation, not reasonably related to any legitimate penological interest or security measure, which burdens the practice of his religion or restricts his free exercise of a sincerely held religious belief.

*Hernandez v. Commissioner*, 490 U.S. 680, 699 (1989); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987); *see also Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). The burden must be substantial and significantly interfere with an inmate's practice of his religious beliefs. *Hernandez*, 490 U.S. at 699. A policy is "valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987); *O'Lone*, 482 U.S. at 349. "[S]uch a standard is necessary if 'prison administrators ..., and not the courts [are] to make the difficult judgments concerning institutional operations.'" *Turner*, 482 U.S. at 89 (quoting *Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 128, 97 S.Ct. 2532, 2539 (1977)). Consequently, the defendant does not have the burden of proving the validity of a regulation; rather, the burden is on the plaintiff to disprove it. *Id*. at 89-91.

In determining whether a prison regulation improperly infringes on an inmate's constitutional rights, the factors to be considered include: (1) whether there is a valid, rational relationship between the regulation and the legitimate government interest it serves; (2) whether there are alternative means of exercising the right available to the inmates; (3) the impact accommodation of the asserted right will have on correctional staff and other inmates; and (4) the absence of ready alternatives as evidence of reasonableness of the regulation. *Turner*, 482 U.S. at 89-91, 107 S.Ct. 2262; *Beard*, 548 U.S. at 529, 126 S.Ct. at 2578. However, a "court is not required to weigh evenly, or even consider explicitly, each of the four *Turner* factors." *Spies v. Voinovich*, 173 F.3d 398, 403 (6th Cir. 1999); *Freeman v. Texas Department of Criminal Justice,* 369 F.3d 854, 860 (5th Cir. 2004)

(interpreting the decision in *Turner* as stating that a court need not weigh evenly or even consider each of the factors, as rationality is the controlling standard).

The stated purpose of the policy regarding church attendance by inmates assigned to the medical unit is to maintain the health of all inmates, especially those suffering from debilitating medical issues. It is clear that this policy, in the face of a challenge under the Free Exercise Clause of the First Amendment, is reasonably related to the legitimate and compelling penological interest of maintaining the health of inmates. Moreover, it is undisputed that Dobbins, while confined in the medical unit, was allowed to possess religious materials, freely consult with the chaplain and otherwise exercise his religion beliefs. Thus, it is likewise clear Dobbins fails to demonstrate that his temporary inability to attend church services unduly burdened his ability to engage in the free exercise of his religion. Based on the foregoing, the court concludes the defendant is entitled to summary judgment on the present claim challenging the church attendance policy as a violation of the plaintiff's right to the free exercise of religion under the First Amendment.[3]

### D. Access to Courts

The law directs that incarcerated persons are entitled to "a reasonably adequate

---

[3] The court notes Dobbins' religious exercise claim would also fail even if pursued under the Religious Land Use and Institutionalized Persons Act of 2000 ["RLUIPA"] as he does not demonstrate a substantial burden on the practice of his religion. *Smith v. Allen*, 502 F.3d 1255, 1276-1277 (11th Cir. 2007 (citations omitted) ("To establish a *prima facie* case under [the applicable] section ... of RLUIPA, a plaintiff must demonstrate 1) that he engaged in a religious exercise; and 2) that the religious exercise was substantially burdened.... A 'substantial burden' [is defined] as being 'significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly.'... [T]o constitute a 'substantial burden' on religious practice, the government's action must be 'more than ... incidental' and 'must place more than an inconvenience on religious exercise.'").

opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977). In *Lewis v. Casey*, 518 U.S. 343 (1996), the Supreme Court clarified and limited the right to assistance recognized in *Bounds*. Specifically, the Court held that "an inmate alleging a violation of *Bounds* must show actual injury" arising from the alleged inadequacies in the law library, legal assistance program or access provided by officials. *Lewis*, 518 U.S. at 349. In identifying the particular right protected by *Bounds*, the Court explained that "*Bounds* established no ... right [to a law library or to legal assistance]. The right that *Bounds* acknowledged was the (already well-established) right of **access to the courts**.... [P]rison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Id.* at 350-351 (emphasis in original) (citations omitted). The Court further opined that *Bounds* did not require "that the State ... enable the prisoner to **discover grievances**, and to **litigate effectively** once in court.... To demand the conferral of such sophisticated legal capabilities upon a mostly uneducated and indeed largely illiterate prison population is [not something] ... the Constitution requires." *Id.* at 354 (emphasis in original).

The Court similarly rejected the argument that the mere claim of a systemic defect, without a showing of actual injury, presented a claim sufficient to confer standing. *Id.* at 349. Moreover, *Lewis* emphasized that a *Bounds* violation is related to the lack of an

inmate's capability to present claims. 518 U.S. at 356. "*Bounds*, which as we have said guarantees no particular methodology but rather the conferral of a capability -- the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts. When any inmate ... shows that an actionable claim of this nature which he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented, because this capability of filing suit has not been provided, he demonstrates" the requisite actual injury. *Lewis*, 518 U.S. at 356. Finally, the Court discerned that the injury requirement is satisfied only when an inmate has been denied "a reasonably adequate opportunity to file nonfrivolous legal claims challenging [his] convictions or conditions of confinement.... ***[I]t is that capability, rather than the capability of turning pages in a law library, that is the touchstone***." *Id*. at 356-357 (emphasis added). "[T]he Constitution does not require that prisoners ... be able to conduct generalized research, but only that they be able to present their grievances to the courts - a more limited capability that can be produced by a much more limited degree of legal assistance." *Id*. at 360. The Court admonished that federal courts should allow prison officials to determine the best method of ensuring that inmates are provided a reasonably adequate opportunity to present their nonfrivolous claims of constitutional violations to the courts. *Id*. at 356. A federal district court must "'scrupulously respect[] the limits on [its] role,' by 'not ... thrust[ing] itself into prison administration' and instead permitting '[p]rison administrators [to] exercis[e] wide discretion within the bounds of constitutional

15

requirements.'" [*Bounds*, 430] U.S. at 832-833, 97 S.Ct. at 1500." *Id*. at 363.

Dobbins presents only a conclusory allegation of a constitutional violation and fails to allege any shortcomings with the legal access provided to him during his confinement in the Kilby medical unit which actually hindered his efforts to pursue claims before this or any other court. Although, while confined in the medical unit, Dobbins did not have physical access to the law library, it is undisputed that at all times while housed therein correctional officials allowed Dobbins access to legal materials and reference books acquired from the prison law library and delivered to him at the medical unit.

The record in this case and several other cases filed by Dobbins with this court in 2008 and 2009 establish that correctional personnel provided Dobbins access to legal materials during his confinement in the medical unit at Kilby and in no way inhibited his preparation of legal documents, filing of pleadings or processing of any cause of action.[4] In addition, throughout the proceedings in this case and his numerous other cases, Dobbins repeatedly demonstrates he is both proficient and prolific at presenting and arguing the claims of his choice to the court of his choosing. Nothing in the record indicates that the action about which Dobbins complains improperly impeded or adversely affected his efforts to pursue nonfrivolous legal claims. Dobbins has failed to come forward with any evidence that the actions about which he complains deprived him of the ***capability*** of

---

[4]From July 22, 2008, until March 4, 2009, Dobbins filed and effectively litigated seven civil actions with this court. Moreover, the undisputed record in this and another of his cases, *Dobbins v. Cummins, et al.*, 2:09-CV-996-MHT-SRW, establish that Dobbins filed these two complaints while confined in the medical unit at Kilby during the period of time made the basis of the instant complaint.

pursing claims in this or any other court. Thus, Dobbins does not establish that he suffered the requisite injury, *Lewis*, 518 U.S. at 356, and defendant is therefore entitled to summary judgment on the legal access claim. *Barbour v. Haley*, 471 F.3d 1222, 1225 (11th Cir. 2006) (access to courts claim fails because plaintiff did not show any actual injury); *Chandler v. Baird*, 926 F.2d 1057 (11th Cir. 1991) (inmate entitled to no relief on access to courts claim in "the absence of any indications of ultimate prejudice or disadvantage....").

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendant's motion for summary judgment be GRANTED.

2.  Judgment be entered in favor of the defendant.

3.  The costs of this proceeding be taxed against the plaintiff.

4.  This case be dismissed with prejudice.

It is further

ORDERED that on or before June 6, 2011, the parties may file objections to this Recommendation. Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the

Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, en banc)*, adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE, this 23rd day of May, 2011.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE